**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

St. Jude Medical S.C., Inc., a Minnesota corporation,

Plaintiff,

v.

Annette Cormier, an individual,

Defendant.

Civil No. 12-2098 (DWF/JSM)

**CORRECTED MEMORANDUM OPINION AND ORDER**

---

Gregg H. Metzger, Esq., and James A. Gale, Esq., Feldman Gale, PA; and Thomas J. Conley, Esq., Law Office of Thomas J. Conley, counsel for Plaintiff.

Julian C. Zebot, Esq., William Z. Pentelovitch, Esq., and Wayne S. Moskowitz, Esq., Maslon Edelman Borman & Brand, LLP, counsel for Defendant.

---

The Court issues this corrected Memorandum Opinion and Order. The Court notes that a correction was made to the final sentence of the paragraph that begins on page 12 and ends on page 13. Specifically, the Court changed that sentence so as to indicate that St. Jude had a full and fair opportunity to litigate the matter in the Florida Arbitration.

## INTRODUCTION

This matter is before the Court on a Motion for Judgment on the Pleadings brought by Defendant Annette Cormier ("Defendant") (Doc. No. 9). For the reasons set forth below, the Court grants the motion.

## BACKGROUND

Defendant was formerly employed at-will by St. Jude Medical S.C. ("St. Jude") as a cardiac rhythm management ("CRM") technical services specialist. (Doc. No. 1, Compl. ¶¶ 15, 18, Ex. B § 2.2.) At the time, Defendant's husband, Joe Cormier, was a St. Jude CRM sales representative. (Compl. ¶ 11.) Joe Cormier had a term-of-years employment agreement with St. Jude that expired in October 2011. (*Id*. ¶ 41.) Defendant helped her husband with servicing his assigned accounts (such as hospitals and physicians) in the Miami area. (*Id*. ¶¶ 13, 18.)

In February 2009, Defendant resigned from St. Jude and became employed by Medtronic as a sales representative. (*Id*. ¶ 38.) In February 2010, St. Jude sued Medtronic in Florida state court (the "Florida Action"). (*Id*. ¶ 44.) St. Jude alleged that Medtronic tortiously interfered with the relationship between St. Jude and Joe Cormier and, specifically, that Medtronic's employment of Defendant was part of a scheme in which Joe Cormier diverted business from his St. Jude accounts to Defendant and other Medtronic employees. (*Id*.; Doc. No. 20, Moskowitz Aff. ¶ 2, Ex. A ¶¶ 15-18.) St. Jude and Medtronic agreed to arbitrate the dispute and stay the Florida Action (the "Florida Arbitration"). (Compl. ¶ 45.) The relevant arbitration agreement between St. Jude and Medtronic provided in part:

> Directly related claims and/or parties may be added in the Florida Arbitration, subject to the discretion of the arbitrator(s) and/or the Florida Court, in which event those claims shall also be considered "Claims" for purposes of this Agreement. In particular, but without limitation, either party may seek to add Joe Cormier, Annette Cormier, and/or Mikel Mancini as a party to the Florida Arbitration. It is understood and agreed that any parties added to the Florida Arbitration shall not be parties to this

> Agreement and may only participate in the Florida Arbitration if they explicitly agree in writing to participate in the Florida Arbitration with the arbitrator(s) selected by St. Jude and Medtronic and subject to the terms set by this Agreement . . . . Nothing herein contained shall be construed to preclude St. Jude from proceeding against Joe Cormier, Annette Cormier, and/or Mikel Mancini in relation to the Claims in, by and through any other action or proceeding (with or without their consent), and, in the event St. Jude does so proceed against Joe Cormier, Annette Cormier and/or Mikel Mancini in, by and through some other action or proceeding, the Florida Arbitration between St. Jude and Medtronic shall not be delayed, interrupted, impaired or otherwise affected in any way.

(Moskowitz Aff. ¶ 2, Ex. B ¶ 8.)

In the Florida Arbitration, St. Jude alleged that Medtronic wanted to hire Joe Cormier, but could not because he had an employment agreement with St. Jude. (Moskowitz Aff. ¶ 2, Ex. D ("Arbitration Demand") ¶ 17.) According to St. Jude, Medtronic therefore hired Defendant to induce Joe Cormier to divert St. Jude business from Joe Cormier's accounts to Medtronic while he remained employed by St. Jude. (*Id*. ¶¶ 17-22.) St. Jude alleged that Joe Cormier had control over the accounts, and that Medtronic's employment of Defendant was part of a scheme to divert accounts from St. Jude to Medtronic. (*Id*. ¶¶ 12, 20-22.) St. Jude also alleged that Defendant marketed Medtronic's CRM devices to his St. Jude accounts during an applicable one-year non-compete, and that Joe Cormier encouraged his accounts to purchase Medtronic products. (*Id*. ¶¶ 20-24.) Based on these factual allegations, St. Jude asserted the following claims against Medtronic: (1) tortious interference with its business relationship with Joe Cormier; (2) tortious interference with its employment contract with Joe Cormier; (3) tortious interference with its business relationship with Joe Cormier's accounts; and (4) unfair competition. (*Id*. ¶¶ 28-48.)

With respect to each claim, St. Jude alleged that Medtronic was liable for Defendant's conduct because Defendant was acting on behalf of Medtronic as its employee and agent. (*Id.* ¶¶ 18, 22, 28, 33, 38, 43.) Specifically, St. Jude alleged that Medtronic induced Joe Cormier to divert business to Medtronic "through [Defendant] as a Medtronic employee" and that Defendant "on behalf of and for the benefit of Medtronic" acted in concert with and induced Joe Cormier to breach his contractual and common law duties to St. Jude. (*Id.* ¶¶ 18, 22.) St. Jude also specifically alleged that Medtronic committed each alleged tort "by and through [Defendant and other employees] acting within the course and scope of their employment with Medtronic." (*Id.* ¶ 22.)

The Florida Arbitration lasted approximately two years. (Compl. ¶¶ 45, 51.) The arbitration panel was made up of three arbitrators, each a jurist from either California or Minnesota. (*Id.* ¶ 46.) The parties were able to conduct discovery. (Moskowitz Aff. ¶ 2, Ex. B ¶ 4.) Both Defendant and Joe Cormier were deposed. The arbitration panel conducted a trial from January 4 through January 20, 2012. (Compl. ¶ 52, Ex. C ("Final Award") at 1.) On July 3, 2012, a Final Award was issued, wherein the arbitration panel ruled in St. Jude's favor on Counts I and II, on the theory that Medtronic had hired Defendant knowing that Joe Cormier would stop working diligently to sell St. Jude products. (Final Award at 1-13.)[1] The arbitration panel awarded St. Jude lost profits in

[1] The arbitration panel noted that "[i]nasmuch as Counts I and II are dispositive, Counts III and IV, even if proved, would not result in any additional relief and therefore the Panel will not address them." (Final Award at 13.)

the amount of $2,659,192.10. (*Id*. at 15.) The arbitration panel also awarded costs and prejudgment interest. (*Id*.)

Medtronic paid the judgment. (Doc. No. 7, Answer ¶ 56, Ex. D.) St. Jude then commenced an arbitration proceeding against Joe Cormier, and alleges that it would have no objection to Defendant joining as a co-respondent in that arbitration proceeding. (Compl. ¶ 58.) On July 30, 2012, St. Jude filed a Notice of Voluntary Dismissal with the Florida court, dismissing the Florida Action against Medtronic with prejudice. (Answer ¶ 44.)

St. Jude then commenced the present action against Defendant (the "Present Action"). (Compl.) In the Present Action, St. Jude asserts the following claims: (1) unjust enrichment; (2) breach of contract (Defendant's contract); (3) tortious interference with the Joe Cormier agreement; (4) misappropriation of trade secrets; (5) civil conspiracy; and (6) breach of fiduciary duties. (Compl. ¶¶ 62-86.) The Complaint in the Present Action states that: "St. Jude brings the instant related action against [Defendant] to recover additional compensatory damages and restitution beyond the damages awarded in the [Florida] Arbitration." (*Id*. ¶ 57.) At the heart of St. Jude's claims for unjust enrichment, tortious interference, conspiracy, and breach of fiduciary duty is the allegation that Defendant and her husband agreed to divert business from St. Jude to Medtronic in exchange for Medtronic hiring Defendant, and that the compensation Medtronic paid Defendant was an inducement to Joe Cormier to breach his agreement with St. Jude. (*See generally id*. ¶¶ 34-64, 67, 70, 79-81.) With respect to its trade secret misappropriation claim, St. Jude alleges that Defendant transmitted St. Jude's

confidential information to Medtronic after it was disclosed to her by Joe Cormier. (*Id.* ¶¶ 72-78.) In support of its claim for breach of contract against Defendant, St. Jude alleges Defendant breached her contract with St. Jude by breaching the non-compete provision and the confidentiality provisions. (*Id.* ¶¶ 64-66.)

Defendant now moves for judgment on the pleadings, arguing that: each count in the Present Action is based on the same alleged facts that formed the basis for the award in the Florida Arbitration; the arbitration panel determined the full amount of St. Jude's loss for the alleged conduct; and Medtronic satisfied the full award. Defendant asserts that the Present Action violates the fundamental principles of res judicata and collateral estoppel.

**DISCUSSION**

**I. Legal Standard**

A court evaluates a motion for judgment on the pleadings under the same standard as a motion brought under Rule 12(b)(6). *See Ashley County v. Pfizer*, 552 F.3d 659, 665 (8th Cir. 2009). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and

exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II. Applicable Law

Under ordinary conflict-of-law principles, the preclusive effect of a judgment is determined by applying the law of the jurisdiction that rendered the judgment—here, Florida. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). Defendant argues that this principle does not apply because Defendant's employment agreement with St. Jude provides it will be interpreted under Minnesota law "without regard to the principles of conflicts of law." (Compl. ¶ 15, Ex. B at § 15.1.) Defendant further submits, however, that the Court need not decide whether Minnesota or Florida law applies, because no outcome-determinative conflict exists, and res judicata bars St. Jude's purported claims against Defendant under both Florida and Minnesota law.

St. Jude argues that Florida law governs whether and to what extent, if any, the Florida Award has preclusive effect. In light of St. Jude's position, and Defendant's argument that St. Jude's claims against Defendant fail under both Florida and Minnesota law, the Court analyzes the preclusive effect of the Florida Award under both Florida and Minnesota law.[2]

**III. Res Judicata**

**A. Florida law**

Under Florida law, for the doctrine of res judicata to apply, there must be (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality or capacity of the persons for or against whom the claim is made. *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1235 (Fla. 2006); *Amec Civil, LLC v. State of Fla.*, 41 So. 3d 235, 239-40 (Fla. Dist. Ct. App. 2010). Res judicata applies to all matters actually raised and determined, as well as those matters which could have been raised and determined. *See ICC Chem. Corp. v. Freeman*, 640 So. 2d 92, 92 (Fla. Dist. Ct. App. 1994).

St. Jude argues that Defendant's res judicata argument fails due to lack of identity of the parties, the cause of action, and the quality or capacity of the persons for or against whom the claim was made. There is no dispute that there is identity of the thing sued

---

2 Under both state's law, an arbitration award has preclusive effect. *See Booth v. Ericsson, Inc.*, Case. No. 10-20314, 2010 U.S. Dist. LEXIS 53728, at *7-8 (S.D. Fla. May 18, 2010); *Quam v. United Fire & Cas. Co.*, 440 N.W.2d 131, 132 (Minn. Ct. App. 1989).

for—St. Jude seeks monetary damages now, as it did in the Florida Arbitration, and the relief sought by St. Jude in the Florida Action could have been granted in the Present Action.[3]

**1. Identity of the parties**

The Court first considers whether there is identity of the parties. Defendant asserts that she was in privity with Medtronic in the Florida Arbitration. St. Jude asserts that there is a lack of identity of the parties. In support, St. Jude argues that it did not recover the award in the Florida Arbitration against Medtronic based on Defendant's conduct and disputes that Defendant was otherwise a Medtronic privy. Specifically, St. Jude maintains that the Florida arbitrators did not adjudicate the particulars of whether Defendant's contributory activity violated any duties owed to St. Jude, and that Medtronic and Defendant did not otherwise treat each other as privies in the Florida Arbitration. For example, St. Jude points out that the relevant arbitration agreement contemplated that St. Jude could assert separate claims against the Cormiers, and that Defendant was called to testify in the Florida Arbitration and was represented by independent counsel at both her deposition and at trial.

In the Florida Arbitration, St. Jude argued that Medtronic was liable for Defendant's conduct as a Medtronic employee. (Doc. No. 20, Ex. 4 ("Arb. Demand") ¶¶ 20-24.) Specifically, St. Jude claimed that after Defendant began working for

[3] Indeed, St. Jude expressly alleges that it "brings the instant related action against [Defendant] to recover additional compensatory damages and restitution beyond" those awarded in the Florida Arbitration. (Compl. ¶ 57.)

Medtronic, Joe Cormier began diverting business from St. Jude to Medtronic by jointly marketing to his St. Jude accounts and encouraging those accounts to purchase from Defendant at Medtronic. (*Id*. ¶¶ 23-24.) St. Jude also alleged that Medtronic, "by and through [Defendant]" committed the alleged torts, and that "[Defendant] and other Medtronic employees, on behalf of and for the benefit of Medtronic" induced Joe Cormier to breach his contract with St. Jude. (*Id*. ¶¶ 22, 28, 33, 38, 43.)

The Court concludes that by expressly alleging that Medtronic committed the alleged torts "by and through" Defendant, who was acting "on behalf of and for the benefit" of Medtronic within the course and scope of her employment, St. Jude has alleged that Medtronic was liable for Defendant's conduct as an employee. As such, the Court also concludes that Defendant was in privity with Medtronic in the Florida Arbitration. *See, e.g.*, *ICC Chem. Corp.*, 640 So. 2d at 92 (individual fraud claim against attorney barred by res judicata where attorney represented a party who prevailed in prior arbitration and relevant facts included attorney's alleged fraudulent actions); *Atl. Cylinder Corp. v. Hetner*, 438 So. 2d 922, 922 (Fla. Dist. Ct. App. 1983) (estoppel of judgment barred contractor's action against corporate officers where corporation prevailed on same issues in prior action); *Phillips v. Hall*, 297 So. 2d 136, 138-39 (Fla. Dist. Ct. App. 1974). Accordingly, the Court concludes that there was an identity of the parties for purposes of the res judicata analysis.

**2. Identity of the Cause of Action**

Defendant asserts that this case and the Florida Arbitration are based on the same operative facts, making them the same "cause of action" for res judicata purposes.

St. Jude argues that its tortious interference claims against Medtronic in the Florida Arbitration were neither dependent nor predicated upon the notion that Defendant contributed to the interference while a Medtronic employee.

Res judicata bars a subsequent action against a party or its privy based on the same transaction. *See Signo v. Fla. Farm Bureau Cas. Ins. Co.*, 454 So. 2d 3, 5 (Fla. Dist. Ct. App. 1984) ("From one episode or transaction one cause of action emerges, though different theories of liability may exist."); *Booth*, 2010 U.S. Dist. LEXIS 53728, at *7. Here, the Present Action and the Florida Arbitration are both based on the same operative facts and the same actions on the part of Medtronic, through its employee Defendant. In addition, the facts and evidence necessary to maintain the Present Action are the same as those in the Florida Arbitration. St. Jude cannot escape the preclusive effect of res judicata by arguing that its claims are based on different legal theories. The Court concludes that because the Present Action is based on the same operative facts as those litigated in the Florida Arbitration, there is an identity of the cause of action for res judicata purposes.

**3. Identity of Quality or Capacity of the Person For or Against Whom the Claim is Made**

The parties also dispute whether the Present Action and the Florida Arbitration share an identity of the quality or capacity of the person for or against whom the claim is made. Here, St. Jude seeks monetary damages, as it did in the Florida Arbitration, for claims based on the same operative facts upon which it relies to establish its claims in the Present Action. In particular, St. Jude alleges that Medtronic induced Joe Cormier to

divert business from his St. Jude accounts by hiring Defendant, and that Defendant assisted with the diversion after she began working for Medtronic. Further, as discussed above, Defendant was in privity with Medtronic in the Florida Arbitration. Thus, the Court concludes that there is also an identity of quality or capacity of the person for or against whom the claim is made.

**B. Minnesota Law**

Under Minnesota law, res judicata constitutes an absolute bar to a later claim when: (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter. *Ashanti*, 666 F.3d at 1151. Res judicata applies to both claims actually litigated and those that could have been litigated in the earlier action. *Id*.

For the same reasons discussed above, the Court concludes that the elements of res judicata have been met under Minnesota law. First, the Florida Arbitration involved the same set of factual circumstances. Second, Defendant was in privity with Medtronic in the Florida Arbitration.[4] Third, the Florida Arbitration Award constitutes a final

---

[4] Employers and employees do not always stand in privity with each other. *Kaiser v. N. States Power Co.*, 353 N.W.2d 899, 903-04 (Minn. 1984) (concluding firefighters were not in privity with employing city where firefighters asserted different and broader claims than those previously brought by city). In this case, however, Defendant, as an employee of Medtronic, is being sued for actions she took in connection with her employment with Medtronic. As discussed above, in the prior arbitration, St. Jude argued that Medtronic was liable for Defendant's conduct as a Medtronic employee.

judgment on the merits. Finally, St. Jude had a full and fair opportunity to litigate the matter in the Florida Arbitration.

For all the above reasons, the Court concludes that res judicata bars St. Jude from relitigating claims asserted in the Florida Arbitration. Therefore, the Court grants Defendant's motion for judgment on the pleadings.[5]

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendants' Motion for Judgment on the Pleadings (Doc. No. [9]) is **GRANTED** and Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: May 7, 2013

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge

[5] Because St. Jude's claims are barred by res judicata, the Court need not reach the issue of collateral estoppel. The Court notes, however, that under both Minnesota and Florida law, collateral estoppel would likely apply, as St. Jude is seeking to recover additional damages based on the same facts alleged in the Florida Arbitration. *See, e.g.*, *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 650 (Minn. 1990) ("Collateral estoppel, sometimes referred to as issue preclusion, precludes parties from relitigating issues which are identical to issues previously litigated and which were necessary and essential to the former resulting judgment."); *Bradenton Grp., Inc. v. State*, 970 So. 2d 403, 408 (Fla. Dist. Ct. App. 2007) (explaining that collateral estoppel prevents identical parties from relitigating identical issues that have been determined in a prior litigation).